UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

AMADU SHAFIWU,

    Petitioner,

v.

                                     No. 6:26-CV-135-H

MARKWAYNE MULLIN, et al.,

    Respondents.

## ORDER

Amadu Shafiwu, a native and citizen of Ghana, is in ICE custody to enforce an indisputably valid order of removal. Shafiwu asserts that his detention in September 2025 violated DHS's internal regulations and that DHS's conduct violated the Due Process Clause of the Fifth Amendment. Relatedly, he challenges his removal to any third country without prior notice. Dkt. No. 1.

The petition is denied. Any procedural violations in Shafiwu's detention were harmless, and his detention does not violate due process. Thus, he is not entitled to relief.

## 1. Background

The details in Shafiwu's petition are sparse. From what the Court can gather, Shafiwu entered the United States at some point in the past but was ordered removed in December 2025. *See* Dkt. No. 1-1 at 1. Shafiwu sought, and secured, withholding of removal to Ghana under the Convention Against Torture. Dkt. Nos. 1 ¶ 23; 1-1 at 1. Since that time, ICE has detained Shafiwu to effect his removal to a third country. *See* Dkt. No. 1 ¶¶ 22, 26 (noting that Shafiwu was detained in September 2025). To date, the respondents have not notified Shafiwu—nor the Court—of where they intend to remove him. *See id.*

On March 31, 2026, Shafiwu petitioned for a writ of habeas corpus. Dkt. No. 1. The Court issued an order to show cause why his petition should not be granted. Dkt. No. 3. That order gave the respondents until April 23, 2026 to address the petition. *Id.* at 1. But, on Sunday, the respondents filed a notice providing Shafiwu and the Court "with at least three days' notice" before executing a removal. Dkt. No. 7 at 1. The notice does not address the merits of the petition, and it fails to state where Shafiwu will be removed. *See id.* at 1. Shafiwu did not file a brief in response.

## 2.    Legal Standards

### A.    Due Process

For well over a century, the Supreme Court has held that men and women subject to deportation have at least some measure of due process protection. *See The Japanese Immigrant Case*, 189 U.S. 86 (1903). But the level of process to which they are entitled varies. *Compare Landon v. Plasencia*, 459 U.S. 21, 34–35 (1982) (providing a process standard also provided to citizens in the case of a lawful permanent resident), *with DHS v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020) (providing minimal process to an alien apprehended at the border). Relevant here is the Supreme Court's standard of due process in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court considered due process in the context of detention to enforce a final order of removal under 8 U.S.C. § 1231. Under that statute, the government must ordinarily remove an alien within 90 days of the final order of removal or else release him subject to supervision. 8 U.S.C. § 1231(a)(3). However, Section 1231(a)(6) provides that certain aliens "may be detained beyond the removal period." In *Zadvydas*, the Supreme Court interpreted Section 1231(a)(6) to determine how long the government may detain an

alien pending removal under this Section. 533 U.S. at 682. The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Shafiwu's habeas petition. *See id.* at 688; Dkt. No. 1 ¶ 6. Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision. *Zadvydas*, 533 U.S. at 699. Doing so would violate due process because such long-term detention requires "a criminal proceeding with adequate procedural protections." *Id.* at 690 (emphasis omitted). Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably

foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the respondents to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

### B.    The INA Removal Provisions

Federal regulations govern the issues in this habeas petition as well. 8 C.F.R. § 241.4(l)(2)(iii) gives the government discretion to end an Order of Supervision "to enforce a removal order." Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13. *See* § 241.4(b)(4). Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

### 3.    Analysis

While the Court would normally await the resolution of merits briefing on a petition, it is not required to do so. The embedded likelihood of removal question in this petition, though unartfully pled, was a matter that suggested that the petitioner might be "entitled" to a writ of habeas corpus. 28 U.S.C. § 2243. In light of the removal notice, that is no longer

the case. Thus, the Court exercises its discretion to summarily deny the petition. *See id.*;

*Wottlin v. Fleming*, 136 F.3d 1032, 1034 (5th Cir. 1998).[1]

> **A.  Even assuming that the respondents did not follow the procedural requirements of the INA's implementing regulations, Shafiwu would not be entitled to habeas relief because any error was harmless.**

Shafiwu broadly alleges that the respondents have "not provided [him with] the full

post-order custody review process required by 8 C.F.R. § 241.4, including timely written

notice of review, a meaningful opportunity to submit evidence supporting release, and a

written custody determination by concrete evidence that removal is reasonably foreseeable."

Dkt. No. 1 ¶ 27.

For the purpose of this analysis, the Court assumes that the respondents have yet[2] to

follow the procedural requirements of Sections 241.4(l) and 241.13(i)(3) and the factors for

consideration in Section 241.13(f). Harmless error applies in immigration cases generally.

*Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v.*

*Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918,

at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir.

2004)) (further citation omitted). The same is true for an agency's procedural violations.

*See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012). Under a harmless-error

analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

---

[1] At times, the petition veers into discussion about the possibility of a bond hearing under 8 U.S.C. § 1226. *See, e.g.*, Dkt. No. 1 ¶¶ 10, 35. To the extent Shafiwu raises such an argument, it is rejected as frivolous. Section 1226 only applies to detention *before* a final order of removal issues.

[2] The Court notes that there is no particular timeline in which these procedures must happen. The procedures all take place after the alien is detained, so they are not precursors to detention. *See* 8 C.F.R. § 241.13(i)(3) (providing that these procedures arise "promptly after [an alien's] return to [ICE] custody").

The facts here are materially similar to a recent decision of this Court, *Nguyen v. Noem*, 797 F. Supp. 3d 651 (N.D. Tex. 2025). There, the petitioner challenged his detention process as a violation of Section 241.13(i)(3), which governs revocation of an Order of Supervision for removal. Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances." *Id.* at 663. Here, as in that case, Shafiwu has had the opportunity to obtain counsel, to make a full argument to a federal court regarding his detention, and to submit evidence. In addition, Shafiwu had an opportunity to respond to the respondents' removal notice, though he declined to act.

As a result, Shafiwu has received sufficient notice and process because the respondents have identified the basis for Shafiwu's ongoing detention, and he has had an opportunity to be heard. Thus, even if the respondents failed to conform to the regulations set forth in Section 241.4(l)(1) and the factors for consideration in re-detention in Section 241.13(f), any error is now harmless in light of the procedures in this case. There is no basis, on these grounds, for ordering Shafiwu's immediate release. Because habeas is not backward-looking, the process provided now renders forward-looking relief separately inappropriate. *See Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention."); *Lane v. Williams*, 455 U.S. 624, 631 (1982) (explaining that where detainment or its consequences have expired, a habeas petition is moot); *Nguyen*, 797 F. Supp. 3d at 670 (same).

### B.    Shafiwu's due process arguments fail.

Shafiwu appears to raise three due process arguments.  First, Shafiwu appears to suggest that an individualized hearing is required in light of *Zadvydas*' recognition of the flight-risk and public-safety grounds for civil detention.  Dkt. No. 1 ¶ 38.  Second, and relatedly, he intuits that procedural due process requires at least some kind of hearing— seemingly a bond hearing.  *See id.* ¶¶ 10, 29.  Last, he contends that due process requires some kind of notice before he can be removed to a third country.  *Id.* ¶ 34.

None of these arguments persuade.  Start with the *Zadvydas* argument.  As the Court explained in *Ladak v. Noem*, substantive due process in light of *Zadvydas* requires nothing more than the determination that the petitioner is subject to a significant likelihood of removal in the reasonably foreseeable future.  814 F. Supp. 3d 712, 730 (N.D. Tex. 2025).  Even if the Court assumed for sake of argument that Shafiwu was perfectly peaceable and ready to comply with terms of release, those considerations are immaterial if the requisite likelihood of removal exists.  *See id.*  In light of the respondents' removal notice, it appears significant likely that Shafiwu will be removed to a third country in the coming days.  In spite of the notice, Shafiwu has done nothing to rebut that possibility.  Finding that a significant likelihood of removal exists in the reasonably foreseeable future, the Court concludes that Shafiwu's due process rights are not violated by his continued detention.

Next is the procedural argument, which relates to the process of detention and to the question of whether Shafiwu is entitled to some kind of individualized hearing.  As the Court has explained in the pre-removal context, Shafiwu "has 'only those rights regarding admission that Congress has provided by statute.'"  *Montelongo Zuniga v. Lyons*, 814 F. Supp. 3d 685, 697 (N.D. Tex. 2025) (quoting *Thuraissigiam*, 591 U.S. at 140).  Since the INA

expressly permits Shafiwu's detention pending removal in these circumstances, the argument that he is entitled to some sort of release as a matter of process is untenable. *See id.* And, again, given that there is no underlying liberty deprivation here, the due process claim necessarily fails. *See Ladak*, 814 F. Supp. 3d at 730; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to . . . the exclusion or expulsion of aliens, would be valid.").

Last is the third-country removal argument. Shafiwu cites the *D.V.D. v. DHS* litigation in the District of Massachusetts as "persuasive authority" only, as the merits relief in that decision was stayed. Dkt. No. 1 ¶ 34. But the problem is more difficult than that: *D.V.D.* is a "non-opt-out class [action]," meaning that the Supreme Court's stay of relief in that case precludes issuing relief here. *Nasrabadi v. Villegas*, No. 1:25-CV-129, Dkt. No. 16 at 6 (N.D. Tex. Oct. 28, 2025); *see DHS v. D.V.D.*, 145 S. Ct. 2153 (2025).

And, indeed, Shafiwu belongs to the *D.V.D.* class. That class is defined as

> All individuals who have a final order of removal issued in proceedings under Section 240, 241(a)(5), or 238(b) of the INA (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

*Nasrabadi*, No. 1:25-CV-129, Dkt. No. 16 at 5–6 (quoting *D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025)). Shafiwu is subject to a final order of removal, his original removal notice (before the grant of withholding of removal) only lists Ghana as a country of removal, and any removal must necessarily be executed after the cutoff date. *See* Dkt. No. 1-1 at 3. Thus, any claim for relief here must be raised in the District of Massachusetts.

## 4.    Conclusion

To the extent the respondents failed to follow their own internal regulations, the process Shafiwu has received in this Court renders any error harmless.  Moreover, the respondents' conduct here did not violate Shafiwu's limited due process rights.  Thus, his petition for a writ of habeas corpus (Dkt. No. 1) is denied.

So ordered on April 22 , 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE